IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

**Jacob T. Unger,**

Plaintiff,

v.

**Timothy C. Carter,**

Defendant.

Civil Action No. 5:25-cv-00029

**Plaintiff's Memorandum in Opposition to Defendant's Motion for Sanctions Under Rules 16(f) and 37(d)**

## INTRODUCTION

Defendant Timothy C. Carter asks the Court to dismiss this action, or to exclude the evidence supporting it, because Plaintiff Jacob T. Unger served his discovery responses late. Dkt. Nos. 39, 40. The record supports no sanction beyond reasonable expenses. Although Unger's interrogatory answers came ten days late and his production responses fifteen days late, every answer and response reached Carter more than two weeks before he filed this motion. Carter put the answers to use. Eight days after receiving them, he gave notice of subpoenas to the four law-enforcement agencies that Unger's answers named as places where he had sought work. The principal facts Carter asks the Court to exclude, including Sergeant Staffa's directive to issue the reckless-driving summons, appear in Unger's January 12, 2026 initial disclosures and in Carter's own internal-investigation report.

The Court entered no order compelling discovery and no order warning of dismissal. Carter's counsel wrote on August 21 that the parties had "tentatively agreed to a short extension of the discovery and summary judgment deadlines (subject to court approval)." Def.'s Mem. Ex. 2, at 1, Dkt. No. 40-2. Unger accepts that Rule 16(f) reaches the delay. That rule and Rule 37(d) both

make reasonable expenses the ordinary sanction, and the Fourth Circuit reserves dismissal for "only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). Unger will serve a new verification of his answers by October 8, 2026. The Court should deny Carter's requests for dismissal, preclusion, and waiver.

## STATEMENT OF FACTS

Unger disclosed his witnesses, documents, and damages in January 2026, served his discovery responses between August 24 and August 29, 2026, and will serve a new verification by October 8, 2026. Only Count V remains, and it rests on two sentences in Carter's May 7, 2024 public statement. Mem. Op. 20–21, Dkt. No. 13; Mem. Op. & Order, Dkt. No. 30. On December 11, 2025, the Court kept the August 18, 2026 close of discovery and set September 17, 2026, as the deadline for dispositive motions. Oral Order, Dkt. No. 25. It deferred any trial date until "after the close of discovery and the resolution of any dispositive pretrial motions." *Id.* The Court has not set a trial date.

On January 12, 2026, the date the Court set, Unger served his Rule 26(a)(1) initial disclosures. Oral Order, Dkt. No. 25; Pl.'s Initial Disclosures 9 (Ex. 1). They identified Sergeant Keith Staffa and listed the subjects of his knowledge as "Instructions to Plaintiff regarding DUI investigation; directive to issue reckless driving citation; instructions regarding destruction of summons; events of April 5-6, 2024." Pl.'s Initial Disclosures 2 (Ex. 1). They identified Master Deputy Hank Hoover, Captain Glenn Ogle, the driver, the Commonwealth's Attorney, the state trooper to whom Unger reported his concerns, and Unger's treating counselor. *Id.* at 1–3. They described the Department of Criminal Justice Services hearing file, which contains Carter's signed decertification notice and his termination letter. *Id.* at 4–5. They also described Unger's pay records, his legal

invoice, and Carter's May 7, 2024 videos. *Id.* at 5–6. They computed each category of damages, including the earnings Unger received in mitigation. *Id.* at 6–7.

On July 15, 2026, Carter served his first interrogatories and requests for production. Dkt. No. 32. Unger's responses were due on August 14. *See* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). On August 19, Unger's counsel served amended initial disclosures narrowed to the remaining claim and wrote that the discovery responses would follow "momentarily." Def.'s Mem. Ex. 1, Dkt. No. 40-1. On August 21, Carter's counsel asked when the responses would arrive. In the same email she wrote, "During our telephone call, we tentatively agreed to a short extension of the discovery and summary judgment deadlines (subject to court approval) for limited discovery, contingent on what the written discovery revealed." Def.'s Mem. Ex. 2, at 1, Dkt. No. 40-2.

Unger served his interrogatory answers at 9:42 a.m. on August 24, before the status conference set for 10:30 a.m. that day. Def.'s Mem. Ex. 4, at 1, Dkt. No. 40-4; Dkt. No. 35. His counsel explained that he had "had trouble contacting my client for a couple answers that need to be finished." Def.'s Mem. Ex. 4, at 1, Dkt. No. 40-4. He sent the answers "as-is now so that you at least have the rest of the material to refer to in the interim." *Id.* He re-served them at 9:48 a.m. with a corrected caption. Def.'s Mem. Ex. 5, at 1, Dkt. No. 40-5. The Court had scheduled the conference on August 12, two days before Unger's responses were due. Dkt. No. 35. Carter's counsel raised the delay at the conference, and the Court entered no order on discovery. Def.'s Mem. 2, Dkt. No. 40; Dkt. No. 36.

On August 25, Unger served updated answers that completed the two unfinished answers. Def.'s Mem. Ex. 6, Dkt. No. 40-6. On August 26, Carter's counsel noted that Unger had not verified the updated answers and that one answer referred to a W-2 that was not attached. Def.'s Mem. Ex. 7, at 1, Dkt. No. 40-7. Unger's counsel replied the same day that he would obtain an updated

verification and that documents still arriving from third parties, in response to informal requests, had delayed the production. Def.'s Mem. Ex. 8, at 1, Dkt. No. 40-8. Unger served his responses to the requests for production, with his production, on August 29. Def.'s Mem. Ex. 9, Dkt. No. 40-9. Those responses identified his tax returns for 2020 through 2025 among the documents produced. *Id.* at 3. His counsel explained that for "[t]he last couple days" he had tried to upload the production to the link Carter's counsel provided "but continued to have issues," and that the files were now at that link. Email from Elliott M. Harding to Rosalie P. Fessier (Aug. 29, 2026, 10:35 a.m.) (Ex. 4).

On September 1, two weeks after discovery closed, Carter's counsel sent Unger's counsel copies of four subpoenas duces tecum directed to the Frederick, Loudoun, and Prince William County Sheriff's Offices and the Mount Jackson Police Department. Ex. 5. Unger's August 24 answer to Interrogatory No. 8 had identified those four agencies as places where he had sought law-enforcement work. Pl.'s Answer to Interrog. No. 8, Def.'s Mem. Ex. 4, Dkt. No. 40-4. Each subpoena commanded production by September 16 of Unger's "employment application file, including any documents or correspondence reflecting the reasons Mr. Unger was not offered or did not accept a position." Ex. 5. Carter filed no record obtained under those subpoenas with either of his motions. *See* Dkt. Nos. 38, 40.

Carter filed this motion and his motion for summary judgment on September 17, 2026. Dkt. Nos. 37, 39. His motion certifies that his counsel conferred "in an effort to obtain the discovery without court action." Dkt. No. 39, at 1. His memorandum acknowledges that "Plaintiff ultimately served discovery responses and produced documents." Def.'s Mem. 1, Dkt. No. 40.

Unger will serve a new verification of his interrogatory answers by October 8, 2026, after he reads the answers in their final form.

## ARGUMENT

Two rules govern the motion. Rule 16(f) reaches Unger's failure to complete discovery by the scheduling deadline. Rule 37(d) fits less well because Unger served his responses before Carter moved. Both rules make reasonable expenses the ordinary sanction. Fed. R. Civ. P. 16(f)(2); Fed. R. Civ. P. 37(d)(3). Dismissal requires the Court to weigh four factors, which are (1) bad faith, (2) prejudice, (3) the need for deterrence, and (4) the effectiveness of less drastic sanctions. *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc). Preclusion under the test Carter chose turns on whether the late disclosure was harmless. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). Good cause excuses untimely objections. Fed. R. Civ. P. 33(b)(4). On this record, each standard limits the sanction to expenses.

### I. Rule 16(f) Governs the Late Service, and Both Rule 16(f)(2) and Rule 37(d)(3) Make Reasonable Expenses the Ordinary Sanction.

Unger completed discovery after the deadline the Scheduling Order fixed, and Rule 16(f) reaches that failure. The rule permits "any just orders" when a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). It then sets the presumptive sanction. The court "must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2). The August 21 agreement did not extend the deadline, because a schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Unger therefore accepts that Rule 16(f) makes a sanction available.

Rule 37(d) fits the record less well. It authorizes sanctions when a party "fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). A motion under it must

certify that the movant conferred "in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B). The certification presupposes an answer not yet obtained. Carter already held every answer and response when he certified on September 17 that his counsel had conferred "in an effort to obtain the discovery without court action." Dkt. No. 39, at 1; Def.'s Mem. 1, Dkt. No. 40. The last request in his exhibits, for the verification and the W-2, came on August 26, three weeks before he moved. Def.'s Mem. Ex. 7, at 1, Dkt. No. 40-7.

Whether Rule 37(d) reaches late responses remains unsettled. The Fourth Circuit has noted authority on both sides of whether Rule 37(d) reaches anything short of a total failure to respond and has not decided the question. *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995). A district court in this circuit has called that authority "inconclusive." *Ogunsula v. Warrenfeltz*, No. ELH-20-2568, 2024 U.S. Dist. LEXIS 13128, at *27 (D. Md. Jan. 25, 2024). District courts divide. *Compare Eller v. Prince George's Cnty. Pub. Sch.*, No. TDC-18-3649, 2020 U.S. Dist. LEXIS 234367, at *37 (D. Md. Dec. 11, 2020) (holding that "[s]anctions are only available under Rule 37(d) where a party fails to serve any response"), *with Valle v. Wolff*, 627 B.R. 821, 828 n.7 (D. Md. 2021) (treating untimely responses as a Rule 37(d) violation), *and Jenkins v. Woody*, No. 3:15cv355, 2017 U.S. Dist. LEXIS 9581, at *47–48 (E.D. Va. Jan. 21, 2017) (applying Rule 37(d) to a late production and awarding fees only).

The Court need not decide the question, because both rules produce the same result. Rule 37(d)(3) makes the Rule 37(b)(2)(A) orders discretionary ("Sanctions may include") and makes expenses mandatory. The court "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). The Advisory Committee distinguished the two remedies when it

wrote the provision. "If default is caused by counsel's ignorance of Federal practice, or by his preoccupation with another aspect of the case, dismissal of the action and default judgment are not justified, but the imposition of expenses and fees may well be." Fed. R. Civ. P. 37(d) advisory committee's note to 1970 amendment (citations omitted). Under either rule, the Court decides which sanction is proportionate, and both rules make expenses the ordinary sanction.

## II. Dismissal Is Unwarranted Because None of the Four *Belk* Factors Supports It.

The Court's discretion is narrowest when the sanction would end the case. "In the case of default, the 'range of discretion is more narrow' than when a court imposes less severe sanctions." *Hathcock*, 53 F.3d at 40 (quoting *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503 (4th Cir. 1977)). The Fourth Circuit confines dismissal to "only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard." *Mut. Fed.*, 872 F.2d at 92. The Court weighs (1) whether the noncomplying party acted in bad faith, (2) how much prejudice the non-compliance caused, (3) whether the particular sort of noncompliance needs deterrence, and (4) whether less drastic sanctions would be effective. *Belk*, 269 F.3d at 348. The Fourth Circuit vacated a Rule 37(d) dismissal even though the plaintiff had made a "complete failure to provide discovery for almost a year" and had ignored a "court-ordered discovery deadline." *T-Zikssari v. Glendening*, No. 93-1840, 1995 U.S. App. LEXIS 15498, at *10, *16 (4th Cir. June 21, 1995) (unpublished). Unger's delay of ten and fifteen days, cured before Carter filed his motion, is far less serious.[1]

---

[1] Dismissal would also be dispositive of the remaining claim. In this district, a sanctions decision "is generally considered nondispositive unless the sanction imposed is itself dispositive of a claim or defense, i.e., the dismissal of a claim or defense." *Bowers v. Univ. of Va.*, No. 3:06cv00041, 2008 U.S. Dist. LEXIS 44604, at *12 (W.D. Va. June 6, 2008). The District Judge would therefore decide any request for dismissal, on a report and recommendation if she refers the request under 28 U.S.C. § 636(b)(1)(B). *See* Scheduling Order ¶ 19, Dkt. No. 22.

### A. Unger Did Not Act in Bad Faith, Because His Counsel Explained the Delay at the Time and Served the Answers Before Carter Moved.

Bad faith requires more than delay. The plaintiff in *T-Zikssari* had served no responses for almost a year. Yet the Fourth Circuit found "no evidence in the record indicating that plaintiff or her attorneys were attempting to avoid answering defendants' questions or to withhold evidence." 1995 U.S. App. LEXIS 15498, at *10. The court held that "merely such inaction should not indicate a blatant disregard for the rules or the court's scheduling order." *Id.* The question is whether the party set out to defeat discovery, not whether it met every deadline.

Unger's counsel kept Carter informed throughout the delay. He narrowed the initial disclosures to the remaining claim on August 19 and removed a witness at Carter's request on August 20. Def.'s Mem. Ex. 1, Dkt. No. 40-1; Def.'s Mem. Ex. 3, at 2, Dkt. No. 40-3. He explained on August 24 that two answers awaited information from his client and served the rest that morning, before the status conference, rather than hold them back. Def.'s Mem. Ex. 4, at 1, Dkt. No. 40-4. Carter's memorandum reverses that sequence and has the answers following the conference. Def.'s Mem. 2, Dkt. No. 40. He completed those two answers the next day. Def.'s Mem. Ex. 6, Dkt. No. 40-6. He explained on August 26 that third-party documents were still arriving. Def.'s Mem. Ex. 8, at 1, Dkt. No. 40-8. He served the production on August 29, after repeated attempts over the preceding days to upload it to the link Carter's counsel had provided. Def.'s Mem. Ex. 9, Dkt. No. 40-9; Ex. 4. Each step brought Carter more information sooner than a party seeking to withhold it would provide.

The August 21 email confirms that both counsel treated the delay as a scheduling matter. Carter's counsel wrote that the parties had "tentatively agreed to a short extension of the discovery and summary judgment deadlines (subject to court approval) for limited discovery, contingent on

what the written discovery revealed." Def.'s Mem. Ex. 2, at 1, Dkt. No. 40-2. Although that agreement did not bind the Court, it shows that Unger's counsel dealt openly with his opponent. Carter's memorandum states that Unger "never sought an extension of the discovery deadline." Def.'s Mem. 9, 13, Dkt. No. 40. It omits that Carter's counsel had tentatively agreed to one.

Carter's own authority confirms the difference between this record and bad faith. The "last-ditch" compliance language Carter quotes followed repeated violations of court orders. *Mut. Fed.*, 872 F.2d at 94. Here the Court entered no order compelling discovery, and Unger violated none. Delay, explained as it happened and cured before the motion, is not the bad faith and callous disregard that dismissal requires.

### B. Expenses Repair Any Prejudice Carter Suffered, Because He Already Knew the Facts He Says He Lacked.

Prejudice depends on whether the late material mattered. The inquiry "necessarily includes an inquiry into the materiality of the evidence the party failed to produce." *T-Zikssari*, 1995 U.S. App. LEXIS 15498, at *7 (citing *Mut. Fed.*, 872 F.2d at 92). In this district, late and unverified interrogatory answers drew no sanction where the defendants "have not been and will not be prejudiced by Plaintiffs' technical failures." *Smith v. Cent. Sec. Bureau, Inc.*, 231 F. Supp. 2d 455, 472 (W.D. Va. 2002) (report and recommendation), *adopted*, 231 F. Supp. 2d at 458.

Carter already had the information he says the delay withheld. He describes his prejudice as completing discovery without Unger's witnesses, damages, and medical and employment information, and without Unger's contentions on falsity, actual malice, "supervisory involvement," and "Carter's knowledge." Def.'s Mem. 8, 12, 14, Dkt. No. 40. Unger's January 12 disclosures named the witnesses, including Staffa and his "directive to issue reckless driving citation." Pl.'s Initial Disclosures 1–4 (Ex. 1). They also named the counselor, described the employment and pay rec-

ords, and computed each category of damages. *Id.* at 3, 5–7. Unger's complaint pleaded each contention in detail sixteen months before discovery closed. Compl. ¶¶ 22–48, 58–60, 66–68, Dkt. No. 1. And the facts of "supervisory involvement" come from Carter's own file. The internal-investigation report that Carter reviewed before May 7, 2024, records three accounts, including Staffa's own, that Staffa told Unger to issue the reckless-driving summons. Carter Decl. ¶ 5, Dkt. No. 38-1; Carter Decl. Ex. C, at 2–3, Dkt. No. 38-4. Facts that Carter's own investigator recorded cannot surprise him.

The timing of Carter's summary-judgment motion adds no prejudice, because Unger's answers and production predate it. Unger served his answers on August 24 and 25 and his production on August 29, nearly three weeks before Carter filed. Nothing in them responds to a motion that did not yet exist, so Unger could not have used them to "reshape his evidentiary presentation" in response to it. Def.'s Mem. 8, Dkt. No. 40. Nor did the schedule prevent follow-up. Eight days after receiving Unger's answers, Carter gave notice of subpoenas to the four agencies named in the answer to Interrogatory No. 8, seeking Unger's employment application files by September 16, the day before he filed this motion. Ex. 5; Pl.'s Answer to Interrog. No. 8, Def.'s Mem. Ex. 4, Dkt. No. 40-4. His memorandum does not mention those subpoenas. It says only that the delay reduced the time to "determine whether additional discovery or court intervention was necessary." Def.'s Mem. 4, Dkt. No. 40. Carter identifies no other deposition, subpoena, or request that the answers led him to want. Expenses, together with any limited follow-up the Court finds warranted, repair the only harm the record shows.

### C. Deterrence Does Not Call for Dismissal Where No Order Compelled Discovery and No Order Warned of Dismissal.

The Fourth Circuit treats the absence of a warning as a serious defect in a case-ending sanction. It "has emphasized the significance of warning a defendant about the possibility of default before entering such a harsh sanction." *Hathcock*, 53 F.3d at 40. "Because the court had issued only general scheduling orders in the case at bar, the lack of any advance notice is especially problematic." *Id.* An explicit warning is not an absolute precondition where a party's violations are systemic. *Mey v. Phillips*, 71 F.4th 203, 218 (4th Cir. 2023); *see Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, 156 F.4th 443, 456 n.10 (4th Cir. 2025). In *T-Zikssari*, the court listed the measures that should precede dismissal, including "compelling by court order discovery compliance and awarding costs and attorneys fees to be paid by plaintiff," and, "at the very least, warning plaintiff that continued noncompliance might result in dismissal." 1995 U.S. App. LEXIS 15498, at *15.

This case presents a single episode of late service under a general scheduling order. The Court learned of the delay at the August 24 status conference and entered no order compelling discovery, no order setting a new deadline, and no order warning that dismissal might follow. Def.'s Mem. 2, Dkt. No. 40; Dkt. No. 36. Unger's late service is not a pattern of systemic violations. Rule 16(f)(2) already supplies the deterrent that Carter says is missing, because it requires the noncomplying party to pay the expenses its noncompliance causes. A party that knows it will bear those expenses has every reason to meet the deadline. Deterrence does not require ending the case.

The deterrence passage Carter quotes makes the most severe sanction available "in appropriate cases." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam); Def.'s Mem. 9, Dkt. No. 40. The plaintiffs in that case had left key interrogatories largely

unanswered for seventeen months, through numerous extensions, admonitions from the district court, and warnings that Rule 37 sanctions could follow. *Nat'l Hockey League*, 427 U.S. at 640–41. The Supreme Court held that the district judge did not abuse his discretion in finding bad faith on that record and dismissing. *Id.* at 643. Unger's answers came ten days late, and no order or warning preceded them.

### D. Less Drastic Sanctions Are Effective Because Expenses and the Cure Already Served Remedy Every Harm Carter Identifies.

Courts in this circuit have remedied late or incomplete responses with orders to respond and with fees, not with dismissal. One court gave a plaintiff "a final opportunity to provide adequate responses" and denied dismissal. *Ogunsula*, 2024 U.S. Dist. LEXIS 13128, at *3. Another applied Rule 37(d) to a late production and awarded fees only. *Jenkins*, 2017 U.S. Dist. LEXIS 9581, at *47–48. A district court in this circuit affirmed a default judgment for late responses, but the responses there came after the sanctions motion, the trustee called them "wholly inadequate," and the appellants "did not oppose the sanctions motion." *In re Xiaolan Zhang*, No. DKC 12-1287, 2012 U.S. Dist. LEXIS 151019, at *4, *7–8 (D. Md. Oct. 19, 2012).

The Fourth Circuit decision Carter cites on the integrity of the process affirmed a dismissal that followed failed lesser sanctions. *Projects Mgmt. Co. v. DynCorp Int'l LLC*, 734 F.3d 366, 371, 376 (4th Cir. 2013); Def.'s Mem. 10, Dkt. No. 40. The district court there twice declined to dismiss, imposed lesser sanctions first, and dismissed only after finding that they had not cured the prejudice. *Projects Mgmt.*, 734 F.3d at 371, 376. The plaintiff had given false interrogatory answers and false deposition testimony, withheld a large number of relevant documents, and kept making late disclosures until the day before trial. *Id.* at 374. Carter accuses Unger of none of that conduct, and the Court has imposed no lesser sanction that could have failed.

Carter's authority from this district imposed a lesser sanction for worse conduct. The plaintiff there had "stonewalled discovery" across two lawsuits, had never answered the first set of interrogatories, and had failed to serve Rule 26 disclosures. *Lonewolf v. Garrett*, No. 5:18cv00004, 2019 U.S. Dist. LEXIS 77290, at *5, *7 (W.D. Va. May 7, 2019). The court did not dismiss. It barred only witnesses and evidence "which has not been provided in discovery" and imposed monetary sanctions. *Id.* at *1, *12. Judge Hoppe has likewise recommended evidentiary limits and fees, rather than "the extreme sanctions of dismissal or default judgment," for a party's discovery failures. *Power Home Solar, LLC v. Sigora Solar, LLC*, 339 F.R.D. 64, 87, 90 (W.D. Va. 2021) (report and recommendation), *adopted*, 339 F.R.D. at 68–69.

Unger's conduct is less serious than the conduct in *Lonewolf*, and the remedy there would exclude nothing on which Unger's claim depends, because he has served his answers and his production. The updated verification and a privilege log are the only items that Carter's memorandum, filed after the production, says Unger never provided. Def.'s Mem. 3–4, 7, Dkt. No. 40. Unger will serve the verification by October 8, 2026. Part IV addresses the log.

A verification served after the motion cures the defect. This Court has treated answers not made under oath as a defect to be cured. In the decision Carter cites on prejudice, the party had not signed his interrogatory answers and nothing showed that they were made under oath, so the Court compelled him to cure them within twenty-one days and directed each side to bear its own expenses. *Sines v. Kessler*, No. 3:17-cv-00072, 2020 U.S. Dist. LEXIS 102390, at *26, *40 (W.D. Va. June 11, 2020); Def.'s Mem. 8, Dkt. No. 40. Another court denied a motion to strike where the responding party "served updated interrogatories with proper verification" one week after the motion, "effectively curing its initial oversight." *Bailey v. Quest Diagnostics, Inc.*, No. 1:17-cv-625, 2017 U.S. Dist. LEXIS 210730, at *11–12 (E.D. Va. Dec. 19, 2017). Reasonable expenses caused

by the delay, if the Court awards them, complete the remedy. A lesser sanction is not merely available. It is sufficient.

## III. Preclusion Is Unavailable Because Unger Disclosed in January the Central Facts Carter Asks the Court to Exclude.

The disclosure rules do not support Carter's alternative request, which would bar Unger from relying on any witness, document, or contention disclosed after August 18, including "the factual bases for Plaintiff's remaining defamation claim." Def.'s Mem. 13–14, Dkt. No. 40. Rule 37(c)(1) excludes information or a witness only when a party "fails to provide information or identify a witness as required by Rule 26(a) or (e)," and not even then if the failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(e)(1)(A) requires supplementation only if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Carter relies on the five factors of *Southern States*, which are (1) surprise, (2) the ability to cure it, (3) disruption of the trial, (4) the importance of the evidence, and (5) the explanation for the failure. Def.'s Mem. 11, Dkt. No. 40. The Fourth Circuit announced those factors to decide whether a nondisclosure was "substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis." *S. States*, 318 F.3d at 597. Under the test Carter chose, harmlessness defeats exclusion.

Each factor shows that the late service was harmless. Carter suffered no surprise, because most of the matters he asks the Court to exclude appear in Unger's January 12 disclosures. The witnesses in Interrogatory No. 2 appear in the disclosures. Pl.'s Initial Disclosures 1–4 (Ex. 1). The damages and mitigation information in Interrogatory Nos. 5, 7, 8, 9, and 14 appears in the computation of damages. *Id.* at 6–7. The counselor in Interrogatory No. 6 appears by name. *Id.* at 3. The certification proceedings in Interrogatory No. 12 appear in the description of the hearing file and the Department's notices. *Id.* at 4–5. The contentions in Interrogatory Nos. 13 through 20 appear

in the complaint and in Carter's own investigation report. Compl. ¶¶ 22–48, 58–60, 66–68, Dkt. No. 1; Carter Decl. Ex. C, at 2–4, Dkt. No. 38-4. Information "made known to the other parties . . . in writing" required no further disclosure. Fed. R. Civ. P. 26(e)(1)(A). For the remaining items, Carter had the answers three weeks before his deadline and identifies nothing in them that he lacked time to evaluate.

The other four factors also favor Unger. Carter has the answers now and has already acted on them, subpoenaing the four agencies Unger named in his answer about his job search. Ex. 5. The Court can address any further follow-up without disturbing the schedule. Because the Court has not set a trial date, allowing the evidence disrupts no trial. Oral Order, Dkt. No. 25. Counsel explained the delay as it happened. Def.'s Mem. Ex. 4, at 1, Dkt. No. 40-4; Def.'s Mem. Ex. 8, at 1, Dkt. No. 40-8. And the importance of the evidence weighs against Carter's request, not for it. Excluding "the factual bases" of Unger's claim would have the same effect as dismissal, and the *Belk* factors that bar dismissal bar that result as well.

The exclusion decision Carter cites alongside *Lonewolf* ended without an exclusion. He cites a magistrate judge's recommendation to bar a plaintiff from opposing summary judgment with evidence she had not produced. *White v. Golden Corral of Hampton, LLC*, No. 4:13cv27, 2013 U.S. Dist. LEXIS 200812, at *4 (E.D. Va. Dec. 20, 2013) (report and recommendation), *adopted in part*, 2014 U.S. Dist. LEXIS 195901 (E.D. Va. Jan. 15, 2014); Def.'s Mem. 12, Dkt. No. 40. The plaintiff had served no responses and had not appeared for her deposition. *White*, 2013 U.S. Dist. LEXIS 200812, at *2. The district judge did not order the exclusion. He found no bad faith, observed that the defendant had not moved to compel and that the plaintiff, then unrepresented, had received no warning, and ordered her to respond within thirty days and to pay reduced fees. *White*, 2014 U.S. Dist. LEXIS 195901, at *3–5. Carter's memorandum omits that history.

Carter's own treatment of the same information confirms that it caused him no harm. He "expressly reserves the right to utilize any such information for impeachment, cross examination, rebuttal, mitigation, damages offsets, or any other defensive purpose permitted by law." Def.'s Mem. 15, Dkt. No. 40. Information Carter is prepared to use against Unger at trial is information Carter has had time to evaluate.

Applied evenly, the rule Carter proposes would also exclude the internal-investigation report that Carter filed with his own summary-judgment motion. Carter's August 18 responses identified Def. 0001 through Def. 1097 as the documents he reviewed in preparing his interrogatory answers and initial disclosures, and as the material on which his affirmative defenses rest. Def.'s Resps. to Pl.'s First Reqs. for Produc. 3–4 (Ex. 2). The report bears Bates numbers Def. 1104 through Def. 1108, outside that range. Carter Decl. Ex. C, Dkt. No. 38-4. Carter produced it in a first supplement, Def. 1098 through Def. 1134, which his counsel's office served by email at 4:42 p.m. on August 24, six days after discovery closed and hours after his counsel raised Unger's delay at the status conference. Email from Jessica I. Mejia to Elliott M. Harding (Aug. 24, 2026, 4:42 p.m.) (Ex. 3); Def.'s 1st Suppl. Resps. to Pl.'s First Reqs. for Produc. 6 (Ex. 3); Def. 1133 (Ex. 3). Under the rule Carter asks the Court to apply, his own investigation report would be excluded along with Unger's answers. Carter also continued discovery after the deadline he asks the Court to enforce. The four subpoenas he noticed on September 1 called for production on September 16. Ex. 5.

### IV. Good Cause Excuses the Timing of Unger's Objections, and a Privilege Log Satisfies Carter's Remaining Request.

Rule 33(b)(4) lets the Court excuse an untimely objection. "Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). The rule commits the question to the Court's discretion. This Court applies six factors,

which are (1) the length of the delay, (2) the reason for it, (3) any dilatory action or bad faith, (4) prejudice to the requesting party, (5) whether the request was properly framed and not excessively burdensome, and (6) whether waiver would impose an excessively harsh result. *Makina Ve Kimya Endustrisi A.S. v. Zenith Quest Corp.*, No. 3:22-cv-00066, 2025 U.S. Dist. LEXIS 116492, at *16–17 (W.D. Va. June 18, 2025) (citing *Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005)). In *Makina*, this Court found a waiver and still found "good cause not to enforce the waiver," relying on the absence of bad faith and prejudice. *Id.* at *11, *20. Waiver of privilege in particular "is not automatic" and is an "exceedingly harsh sanction." *Smith v. James C. Hormel Sch. of the Va. Inst. of Autism*, No. 3:08cv00030, 2010 U.S. Dist. LEXIS 95668, at *12 (W.D. Va. Sept. 14, 2010).

Although the first two factors weigh against Unger because his responses were late, the third, fourth, and sixth factors favor him. The delay was ten days for the answers and fifteen for the production, and counsel explained it at the time. The record shows no bad faith, as Part II.A explains. Carter identifies no prejudice from any objection. The privilege and work-product objections protect Unger's communications with his lawyers and his lawyers' notes. Def.'s Mem. Ex. 9, at 1, Dkt. No. 40-9. Forfeiting that protection to remedy a fifteen-day delay would impose an excessively harsh result. Unger will serve, by any date the Court sets, a privilege log that identifies each document withheld as privileged or as work product. Good cause excuses the timing of the objections, and the log will provide what Carter's third request seeks in the alternative.

## V. Carter Did Not Follow the Procedure That the Scheduling Order Requires Before Any Discovery Motion.

The Scheduling Order requires the parties to seek the Court's informal help before filing a discovery motion. "Prior to filing any discovery motions, the parties are directed to contact Judge Hoppe's chambers by email in an effort to resolve the issue." Scheduling Order ¶ 19, Dkt. No. 22.

The email must copy counsel of record. *Id.* The Addendum requires, before any contested discovery motion, an email to chambers attaching a joint document that the parties prepare together, followed by an informal hearing on the record. Scheduling Order Addendum ¶ 2, Dkt. No. 23. Unger's counsel received no email to chambers and was never asked to prepare a joint document. Nor does the docket reflect a joint document, which chambers would have directed the Clerk to file, or an informal hearing before Carter filed this motion. *See* Scheduling Order Addendum ¶ 2, Dkt. No. 23; Dkt. Nos. 35–39.

Carter's counsel did raise the delay at the August 24 status conference before Judge Yoon. Def.'s Mem. 2, Dkt. No. 40; Dkt. No. 36. The Court had scheduled that conference on August 12, before any of Unger's responses was due. Dkt. No. 35. The conference was not the procedure the Scheduling Order prescribes. It produced no joint document, no informal hearing before Judge Hoppe, and no order on discovery. Dkt. No. 36. Unger had served his answers before the conference began, and he served his production on August 29, nearly three weeks before Carter filed. Def.'s Mem. Ex. 4, at 1, Dkt. No. 40-4; Def.'s Mem. Ex. 9, Dkt. No. 40-9. The informal process exists to resolve disputes of this kind without motions practice, and Carter's decision not to use it is one more reason to limit any sanction to expenses.

## CONCLUSION

Unger respectfully asks the Court to deny the requests for dismissal, preclusion, and waiver of objections in Carter's Motion for Sanctions, Dkt. No. 39, and limit any sanction to the reasonable expenses that Unger's late service caused.

Respectfully submitted,

Jacob T. Unger
By Counsel

/s/ Elliott M. Harding
Elliott M. Harding (VSB No. 90442)
Harding Counsel, PLLC
123 East Main Street, Eighth Floor, Suite 8B
Charlottesville, Virginia 22902
(434) 962-8465
elliott@hardingcounsel.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

/s/ Elliott M. Harding
Elliott M. Harding (VSB No. 90442)